IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN RE:                                  CASE NO.    16-22988-JKO

DIVERSIFIED HEALTH &                    CHAPTER    7
FITNESS, INC.,

    Debtor.

_____/

## CREDITOR LANTANA PALM BEACH RETAIL, LLC'S RESPONSE TO DEBTOR'S OBJECTION TO PROOF OF CLAIM #3

Creditor and party-in-interest, Lantana Palm Beach Retail, LLC ("Lantana"), by and through undersigned counsel and pursuant to 11 U.S.C. § 502 and Federal Rules of Bankruptcy Procedure 3001, hereby files this Response to Debtor DIVERSIFIED HEALTH & FITNESS, INC.'s ("Debtor") Objection to Proof of Claim #3 (the "Objection") [DE 23], stating as follows:

## INTRODUCTION AND BACKGROUND

On or about September 22, 2016 (the "Petition Date"), the Debtor commenced this proceeding by filing a voluntary petition for relief under Chapter 7 (the "Petition") [DE 1] of the Bankruptcy Code (the "Code"). The Petition was executed by Andrew Barnett ("Barnett"), as the alleged owner of the Debtor, and consisted of a "bare bones" filing including little information about the Debtor or its assets, in addition to failing to include either schedules or a statement of financial affairs. Despite failing to provide any substantive financial information in its Petition, the Debtor still included a creditor's mailing matrix as part of its initial filing—which listed Lantana as one of its creditors and provided the mailing address of the undersigned counsel for notice purposes.

A.    **DEBTOR'S SCHEDULES ARE JUDICIAL ADMISSIONS OF DEBTOR'S STATUS AS TENANT UNDER THE LEASE WITH CREDITOR LANTANA**

1.    The law on the issue of a chapter 7 debtor's standing to object to the claims of its creditors is well-established—a chapter 7 debtor is without standing to object to claims or any order relating to said claims because the debtor does not have a pecuniary interest in the distribution of the assets of its own bankruptcy estate. *See In re Kieffer–Mickes, Inc.,* 226 B.R. 204, 208 (8th Cir. BAP 1998); *see also In re Broady,* 96 B.R. 221, 223 (Bankr. E.D. Mo.1988) ("This is because an objection to a proposed distribution only affects how much each creditor will receive and does not affect the debtor's rights").[1] Rather, the Code makes clear that it is the trustee's job, not the debtor's, to examine proofs of claim and to object to the allowance of any claim that is improper. *See* 11 U.S.C. § 704; *see also In re Walker*, 356 B.R. 834, 848 (Bankr. S.D. Fla. 2006).

2.    Courts have however recognized two limited exceptions to this stringent rule under which a debtor may be afforded standing to object to creditor claims. These exceptions include (1) where no trustee has been appointed in the bankruptcy case; or (2) where there will be a surplus after distribution providing the debtor with a pecuniary interest in the estate. *See Caserta,* 175 B.R. at 775. "[W]hen a debtor disputes claims of creditors, standing is proper if the disallowance of the claims **would create** a surplus of assets to be returned to the debtor." (Emphasis added). *Kunimoto v. Fidell,* 26 Fed. Appx. 630, 632 (9th Cir.2001); *see also Cult Awareness Network v. Martino (In re Cult Awareness Network),* 151 F. 3d 605, 608 (7th Cir.1998) ("If a Debtor can show a reasonable possibility of a surplus after satisfying all debts, then the Debtor has shown a pecuniary interest and has standing to object to a bankruptcy order"). Irrespective of whether the

---

[1] Courts have also consistently held that a chapter 7 debtor is not a "party in interest" for purposes of objecting to creditor claims under Section 502. *See Caserta v. Tobin,* 175 B.R. 773, 774–75 (S.D. Fla.1994).

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

court holds the Debtor to the standard of demonstrating a reasonable possibility of a surplus or proving a certainty of a surplus, it remains the debtor's burden to provide sufficient evidence that disallowance of the contested claim will produce a surplus distribution to the debtor. *See, e.g., Cult Awareness Network,* 151 F. 3d at 608. Most critically though, unless the debtor can ultimately demonstrate that disallowing the subject claims would produce a surplus **which would be available to the debtor**, the debtor lacks standing to object to the claims of creditors. (emphasis added). *See In re Stanley,* 114 B.R. 777, 778 (Bankr. M.D. Fla.1990).

3.      Additionally, courts have routinely refused to consider whether a debtor can ever satisfy the criteria to qualify under the debtor standing exception in cases where the debtor itself is insolvent (or where the debtor's bankruptcy estate is administratively insolvent). A chapter 7 debtor shall be deemed to be insolvent when the amount of the total liabilities reflected on its schedules exceeds the amount of the total assets listed by the Debtor. *See* In *re Riley*, 478 B.R. 736, 745 (Bankr. D.S.C. 2012). Moreover, where, such as here, there are insufficient funds in the estate to cover administrative expenses (including future costs and expenses of the estate), there cannot exist any reasonable possibility of a surplus that gives a debtor standing. *See In re P.R.T.C., Inc.,* 177 F. 3d 774, 778 n. 2 (9th Cir.1999) ("a debtor cannot challenge a bankruptcy court's order unless there is likely to be a surplus after bankruptcy"); *see also In re Fondiller,* 707 F. 2d 441, 442 (9th Cir.1983) ("a hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate"). Accordingly, because an insolvent debtor does not stand to receive any funds from the administration of its estate, the debtor therefore has no pecuniary interest in such administration and lacks standing to object to the validity of proofs of claim filed by its creditors. *See In re Walker*, 356 B.R. 834, 848 (Bankr. S.D. Fla. 2006).

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

4.     Here, on or about October 3, 2016, the Debtor filed its initial schedules ("Schedules"), statement of financial affairs ("SOFA") and other mandatory financial documents [DE 7].

5.     The Debtor's Schedules and SOFA each conclusively reflect the insolvent status of the Debtor as of the Petition Date.  In fact, by its own admission, the only asset the Debtor owned on the Petition Date was its interest in a defunct website—an asset the Debtor considers worthless, assessing a value of $0.00 for such asset on Schedule "B."

6.     The Schedules also provide additional information regarding the claims of each the creditors previously identified by the Debtor in its initial mailing matrix, including Lantana.  More specifically, the Debtor lists Lantana on Schedule "F" as an unsecured creditor of Debtor's bankruptcy estate by virtue of its claim in an unknown amount, arising from a pending lawsuit between the parties.[2]  Importantly, the Lantana claim listed on Schedule "F" is not described as being "disputed" by the Debtor and therefore constitutes a judicial admission by the Debtor regarding the fact that it owes a debt to Lantana including the claims at issue in the Litigation.  *See Morgan v. Musgrove (Matter of Musgrove)*, 187 B.R. 808, 812-13 (Bankr. N.D. Ga. 1995) (finding that the debtor's entry in his schedules listing the Morgans as unsecured creditors of his estate based upon a "fixed and liquidated" claim constituted a judicial admission of the fact that he did owe a debt to the Morgans); *see also In re Standfield,* 152 B.R. 528, 531 (Bankr. N.D. Ill. 1993) (verified schedules and statements may give rise to evidentiary admissions); *In re Leonard,* 151 B.R. 639, 643 (Bankr. N.D.N.Y. 1992) (finding that debtor's schedule entry created admission of debt); *In re McMonagle,* 30 B.R. 899, 903 (Bankr. D.S.D.1983) (by failing to include

---

[2] The lawsuit between Lantana and the Debtor referenced on Schedule "F" is further described by the Debtor's SOFA answers, whereby the Debtor admits that Lantana is pursuing a contract and indebtedness action against the Debtor in the matter *Lantana Palm Beach Retail, LLC v. Diversified Health & Fitness,* Case No. 502013CA001260XXXXMB, pending in the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida (the "Litigation").

the term "disputed" in the description of the scheduled debt, the debtor has waived its right to contest the debt's existence).

7.      Critically, it is undisputed from the record before the Court that the Debtor cannot satisfy its burden to qualify under one of the exceptions to the debtor standing rule.  More specifically, the Debtor cannot satisfy the first prong of the exception to the debtor standing rule because Scott N. Brown, Esq., was already appointed as Trustee on September 22, 2016 to oversee the administration of Debtor's bankruptcy estate.  Additionally, the Debtor cannot establish that there is any reasonable possibility that a surplus after distributions will exist so as to confer standing upon the Debtor to challenge the claims of its creditors.  The Court need not look any further than Debtor's Schedules and SOFA in conducting its analysis of this exemption factor.  Indeed, the Debtor's Schedules make clear that the Debtor is insolvent, listing $0.00 in total assets and, while valuing its liabilities at $0.00, judicially admitting that it is indebted to the IRS and at least three (3) judgment creditors, including Lantana.[3]  These admissions by the Debtor are conclusive on the issue of Debtor's solvency and unequivocally demonstrate a complete lack of any reasonable possibility that a surplus could ever exist and which would be available to the Debtor in this bankruptcy.  Thus, because the Debtor cannot satisfy either of the requirements needed to qualify under the exception to the debtor standing rule, the Debtor is precluded from challenging Lantana's Claim.  As the Debtor is without standing, the Objection fails as a matter of law and must be overruled by this Court.

---

[3] Notably, the Debtor did not indicate on its Schedules that any of the described claims were either contingent, unliquidated or disputed.  *See* DE 7.  Additionally, through the date of this Response, claims totaling $415,434.17 have already been filed by creditors of Debtor's estate in this matter.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

**B.    CREDITOR LANTANA HAS ASSERTED A VALID AND ALLOWABLE PROOF OF CLAIM**

8.    On or about November 21, 2016, in accordance with Bankruptcy Rule 3001(f), Lantana filed proof of claim #3 [POC #3-1] (the "Claim"), asserting an unsecured claim against the Debtor in the amount of $325,787.16, resulting from the Debtor's breach of a lease/guaranty agreement executed in favor of Lantana (collectively, the "Lease Documents"). To support its Claim, in addition to attaching true and correct copies of the Lease Documents, Lantana also included a payment ledger evidencing each payment made by the Debtor pursuant to the terms of the Lease Documents and the outstanding amounts owed by the Debtor.

9.    By meeting the standards imposed by Bankruptcy Rule 3001(f), the Claim constitutes prima facie evidence of the validity and amount of the Claim. Likewise, because Lantana complied with the requirements of 11 U.S.C. § 501 in filing its Claim, the Claim is deemed allowed under Section 502 of the Code, unless the Debtor (or other party in interest) can establish an exception under § 502(b), which provides the statutory grounds upon which a claim can be disallowed. *See Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147, 153 (8th Cir. BAP 2004) ("The Bankruptcy Code could not be more clear: a claim, proof of which is filed, shall be allowed unless it falls within one of the exceptions set forth in Section 502(b)").

10.    Despite the complete absence of any of the statutory grounds enumerated by 11 U.S.C. § 502(b), on or about March 30, 2017, Debtor nonetheless filed the Objection, asserting that the Claim was improper and should be stricken because the Lease Documents attached by Lantana to the Claim list a company known as Diversified Health & Fitness Corp. ("Diversified Health"), a Delaware corporation that the Debtor alleges is a separate and distinct entity from the Debtor itself.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

11.     While unclear from the face of the Objection, it appears that Debtor's claim regarding its status as a distinct and different corporate entity from Diversified Health is premised entirely on the fact that Diversified Health was incorporated in a different state than the Debtor and at a later point in time.  Questionably though, despite claiming to be a separate and distinct entity from Diversified Health, the Debtor (even though Diversified Health and **not** the Debtor is the **only** diversified entity named as a party defendant in the Litigation) filed a Suggestion of Bankruptcy on September 22, 2016, causing the Litigation to be stayed pursuant to 11 U.S.C. § 362.  A true and correct copy of the Suggestion of Bankruptcy filed by the Debtor in the Litigation is attached hereto as **Exhibit "A."**

12.     Similar, the Debtor's claimed separate existence from Diversified Health is also inconsistent with and contradicted by the Debtor's own filings with the United States Securities and Exchange Commission ("SEC").   Indeed, despite claiming a lack of any connection to Diversified Health, on August 13, 2012 (less than 1 year *after* Diversified Health was formed), the Debtor filed Form 10, more commonly known as a General Form for Registration of Securities ("Form 10"), with the SEC, disclosing its financial and business holdings and detailing its overall financial condition (including the condition of its subsidiary companies) for potential investors. Amazingly, notwithstanding Debtor's representation in the Objection that it is a separate and distinct entity from Diversified Health, the Debtor explicitly acknowledged in its Form 10 financial disclosure filing to owning a 47.5 % stake in Diversified Health, in as early as 2012.  Relevant pages from the Debtor's Form 10 filed with the SEC are attached hereto as **Exhibit "B."**

13.     In sum, because the underlying basis for Debtor's Objection is without merit and the Debtor has failed to raise a valid statutory ground under 11 U.S.C. § 502(b) to disallow

Lantana's valid Claim, the Objection is legally insufficient and is required to be overruled as a matter of law.

## C.    DIVERSIFIED HEALTH IS AN ALTER EGO OF THE DEBTOR

14.    Moreover, even assuming *arguendo,* that the Debtor could satisfy the requirements for the standing rule exception (which it cannot), the Objection must still fail because, at all times since its incorporation in 2011, Diversified Health (among other companies also controlled by Barnett) has, upon information and belief, been the alter ego of the Debtor and failed to maintain any corporate, financial or operational existence independent of the Debtor. Debtor's continued claim to the contrary that it is and has been separate and distinct from Diversified Health based on their respective states of incorporation and time of formation is factually inaccurate and requires further discovery and investigation, as requested herein, to fully flesh out exactly who is "the man behind the curtain."

15.    In addition, upon information and belief, both the Debtor and Diversified Health are controlled and managed by Barnett, who routinely disregarded corporate formalities and has failed to maintain the separate identity of each entity.[4] Further, it is suspected that Barnett has regularly converted and/or depleted assets belonging to one entity to the other without consideration and for the improper purpose of shifting assets away from the entity which was obligated to repay a particular debt and intending to default on said obligation, in order to defraud Debtor and Diversified Health's creditors, including Lantana. For example, contrary to the Debtor's claims regarding the separation between itself and Diversified Health, as part of the its

---

[4] Based on the suspected conduct engaged in by Barnett in using the Debtor and Diversified Health for improper purposes, Lantana filed a Notice of Taking Rule 2004 Examination of the Corporate Representative of the Debtor, identified as Barnett, on April 6, 2017 [DE 26]. The Barnett deposition was originally scheduled by Lantana for April 24, 2017, however, due to the unavailability of Debtor's counsel and Barnett, the undersigned agreed to reschedule said deposition for any day prior to May 2, 2017. However, despite repeated requests by the undersigned, the Debtor and its counsel have refused to provide a new date (or respond to any correspondence) for the 2004 examination of Barnett.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

scheme to defraud Lantana, the Debtor's bank records were used as support for Diversified Health's credit application relating to the lease entered into with Lantana.

16.    Most recently, it is believed that as part of a collaborative effort to avoid both Lantana's collection efforts in connection with the Litigation and remove assets from the Debtor's bankruptcy estate, Barnett caused the assets (consisting of the income stream received from 2 of Barnett's other companies—i.e. Zoo Franchise Corp. and American Bodyworks Holdings, Inc.) then owned by Diversified Health to be "sold" to himself, individually, and/or one of his other affiliated companies, for the sum of $250,000.00. While it is believed that the above assets were owned by Diversified Health at the time of their transfer, because the Debtor and Diversified Health have continued to operate as a "single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them." *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994). Accordingly, because Lantana requires additional discovery from the Debtor, Diversified Health and Barnett to fully investigate the extent of the parties' respective liability and obligations to Lantana, in addition to the existence of sufficient facts that are already known and would support a separate adversary proceeding brought by Lantana against the Debtor for, among other causes, claims for alter ego and to pierce the corporate veil[5], it is premature at this point for the Court to consider whether Lantana's claim is unenforceable against the Debtor under Section 502. As such, equity requires that this Court either

---

[5] Lantana believes that sufficient facts already exist that would support both its alter ego and piercing of the corporate veil claims against Debtor. Under Florida law, a plaintiff seeking to maintain an action for alter ego and to pierce the corporate veil, must prove three factors by a preponderance of the evidence: (1) the individual or other corporation dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the individual and/or other corporation was in fact an alter ego of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the plaintiff. *See Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 3rd DCA 1998) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984)).

defer ruling on the Objection or overrule same without prejudice, to allow Lantana to take and complete discovery in this matter and to commence its adversary proceeding against Debtor.

Accordingly, based upon the foregoing, Creditor and party-in-interest, Lantana Palm Beach Retail, LLC, respectfully requests that this Court enter an Order (i) overruling Debtor DIVERSIFIED HEALTH & FITNESS, INC.'s Objection to Proof of Claim #3 [DE 23]; (2) deeming Proof of Claim #3 filed by Lantana as an allowed claim under 11 U.S.C. § 502; and (iii) granting Lantana such other and further relief as the Court deems just and proper under the circumstances.

WE HEREBY CERTIFY that we are admitted to the Bar of the United States District Court for the Southern District of Florida and are compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed this 26th day of April, 2017, with the Clerk of the Court using the CM/ECF system and that a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon those parties who are registered with the Court to receive notifications in this matter.

Respectfully submitted,

/s/David H. Haft
Ricardo A. Reyes (rar@tobinreyes.com)
Florida Bar No. 864056
David H. Haft (dhaft@tobinreyes.com)
Florida Bar No. 68992
Adrian J. Alvarez
Florida Bar No. 0040565
*Attorneys for Lantana Palm Beach Retail, LLC*
TOBIN & REYES, P.A.
225 N.E. Mizner Boulevard, Suite 510
Boca Raton, Florida 33432
Tel:    (561) 620-0656
Fax:    (561) 620-0657
Primary Email: eservice@tobinreyes.com

Filing # 46807656 E-Filed 09/22/2016 03:48:58 PM

IN THE CIRUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

| | | |
|---|---|---|
| Lantana Palm Beach Retail, LLC | ) | |
| Plaintiff, | ) | CASE NO.  502013CA001260 |
| | ) | |
| vs. | ) | |
| Diversified Health & Fitness, Inc. | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

### SUGGESTION OF BANKRUPTCY

COMES NOW the Defendant, Diversified Health & Fitness, Inc., through the undersigned attorney, and would show the Court:

1.   Defendant has filed a petition for relief under Title 11, United States Code, in the United States Bankruptcy Court for the Southern District of Florida, which bears the case number 16-22988.

2.   Relief was ordered on September 22, 2016.

3.   This action is founded on a claim from which a discharge would be a release or that seeks to impose a charge on the property of the estate.

4.   This is for informational purposes only, and does not constitute a notice of appearance by the undersigned.

WHEREFORE, the defendant suggests that this action has been stayed by the operation of 11 U.S.C. § 362.

/s/ George Castrataro, Esq.
George Castrataro, Esq. 0027575
Attorney for Defendant
The Law Offices of George Castrataro, PA
707 NE 3rd Avenue
Suite 300
Fort Lauderdale, FL 33304
954-573-1444
Fax: 954-573-6451
help@lawgc.com

IT IS HERBY CERTIFIED that a copy of the foregoing Suggestion of Bankruptcy was delivered by mail to Lantana Palm Beach Retail, LLC, C/O Tobin & Reyes, P.A., 225 NE Mizner Blvd, Ste 510, Boca Raton, FL 33432, this September 22, 2016.

*EXHIBIT "A"*

**As filed with the Securities and Exchange Commission on August 13, 2012**

Registration No. 000-_____

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# Form 10

### GENERAL FORM FOR REGISTRATION OF SECURITIES
### PURSUANT TO SECTION 12(B) OR (G) OF THE
### SECURITIES EXCHANGE ACT OF 1934

# DIVERSIFIED HEALTH & FITNESS, INC.

*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Florida** | **20-0586052** |
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |

**1850 SE 17th Street, Suite 203, Fort Lauderdale, Florida 33316**
*(Address, including zip code, of registrant's principal executive offices)*

**(954) 449-4700**
*(Registrant's telephone number, including area code)*

*Copies of notices and other communications should be sent to:*

| | |
|---|---|
| **Michael C. Bowen, CFO** | **Charles B. Pearlman, Esq.** |
| **1850 SE 17th Street, Suite 203** | **Pearlman Schneider LLP.** |
| **Fort Lauderdale, Florida 33316** | **2200 Corporate Boulevard NW, Suite 210** |
| **(954) 449-4700** | **Boca Raton, Florida 33431** |
| **(954) 449-8985 (fax)** | **(561) 362-9595** |
| | **(561) 362-9612 (fax)** |

Securities to be registered pursuant to section 12(b) of the Act:

| Title of each class to be so registered | Name of each exchange on which each class is to be registered |
|---|---|
| N/A | N/A |

Securities to be registered pursuant to Section 12(g) of the Act:

**Common Stock**

Indicate by checkmark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of ("accelerated filer and large accelerated filer"), an accelerated filer, or a non-accelerated filer in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Smaller Reporting Company | ☑ |

## EXHIBIT "B"

**DIVERSIFIED HEALTH AND FITNESS, INC. & SUBSIDIARIES**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

## NOTE 16. – RELATED PARTIES

### Other Agreements

Consultant and Director. - On April 1, 2010 we entered into a 4-year agreement with Roger Wittenberns to be a Consultant of the Company under which agreement he shall provide leadership with respect to its day to day management of company owned health clubs, franchise support staff, franchise operations, franchise sales, lead generation, promotions, web site development, acquisition due diligence, and club marketing support. During the initial year of the agreement, The Consultant receives a monthly base fee of $5,000, which may be increased by approval of the compensation committee. Mr. Wittenberns has subsequently waived these fees in an effort to help the Company manage its cash flow.

Vice President of Business Development and Director - On July 23, 2007 we entered into a five year employment agreement with Andrew Barnett, then Vice President and Currently Chief Executive Officer. The CEO currently is entitled to receive a base salary of $150,000 which can increase up to a max of $400,000 (at the sole discretion of the audit committee and board of directors) in the event the Company has achieved annual EBITDA of up to $4,000,000 per year. In addition to his base salary, Mr. Barnett is eligible to receive an annual bonus in an amount of not less than 50% of his base salary. The bonus may be payable as 50% cash and 50% equity as determinate by the board of directors. The Vice President received restricted stock grants of 1,500,000 shares of our common stock upon entering into the agreement (of which, 1,200,000 were cancelled in March of 2010), of which 300,000 shares have vested as of the date of this agreement and 0 shares vest through July 2012, provided that he remains employed by our company. In the event his employment is terminated by the Company (except a termination for cause) or in the event that there is a change of control of the Company, then any unvested shares shall immediately vest. In the event that he voluntarily terminates his employment or his employment is terminated "for cause", any unvested shares will be forfeited.

Two sons of one of the Company's directors act as its area developers in North Florida. As area developers, they receive a portion of royalty revenues attributable to their individual franchises. The Company paid such related parties $6,932 during the year ended December 31, 2011, in addition to 40,000 shares that were issued in connection with this agreement in connection with their services as area developers.

A company, owned by one of the Company's officers, provides personal training services to individual members of company-owned gyms who elect to take this service. The individual members pay directly the related party. The related party received $ 12,040 during the year ended December 31, 2011 in connection with providing the personal training services.

## NOTE 17. – SUBSEQUENT EVENTS

### Issuance of Shares

In April 2012 the Company issued 50,000 shares to Dr. Mark Gold for services as a Director of the Company during 2011. Pursuant to his instructions these shares were issued as follows: 10,000 shares to Dr. Gold and 20,000 to each of his sons.

### Organization of New Companies

On January 1, 2012, the Company organized ZOO Lantana, LLC. This company is owned 47.5% by Diversified Health & Fitness, Inc.; 47.5% by one investor and 5% by Mediterranean Securities, Inc., the Company's investment banker. DHF is the managing member under the operating agreements which do not allow for a substitution of the managing member

On February 12, 2012 the Company organized ZOO Commercial, LLC. This Company is owned 57% by Diversified Health & Fitness, Inc.; 38% by an investor group and 5% by Mediterranean Securities, Inc., the Company's investment banker. DHF is the managing member under the operating agreements which do not allow for a substitution of the managing member. The purpose of the Company is to own and operate a Health Club. No specific location has been identified for this club as yet.

F-23

**DIVERSIFIED HEALTH AND FITNESS, INC. & SUBSIDIARIES**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

**NOTE 17. – SUBSEQUENT EVENTS (Continued)**

On March 2, 2012 the Company through its subsidiary, Diversified Health Partners, LLC, entered into a premises lease with Lantana Palm Beach Retail, LLC for approximately 23,000 sq. ft. located in the Lantana Square Shopping Center on the corner of Jog and Lantana Roads in Lake Worth Florida. The lease is for an initial term of 5 years with three 5 year renewal periods. Rent is payable at the rate of $134,960 in year one, rising to $154,240 in year five. In addition, the Company is liable for its proportionate share of Operating Expenses estimated to be $12,853 per month in year 1. Rent in year 1 is subject to a Rent Credit of $86,760 spread over the first 12 months of the lease.

These premises had been operated by a health club called Stayin' Alive which had and has no affiliation whatsoever with the Company. Stayin' Alive declared bankruptcy and vacated the premises in February, 2012 allowing the Company to negotiate the above lease which gives it the opportunity of operating a new ZOO health club. This club will be owned by ZOO Lantana, LLC and is currently undergoing refurbishment with a planned opening date of May 1, 2012

F-24

## EXHIBIT INDEX

| Exhibit Number | Description |
| --- | --- |
| 3.1 | Amended and Restated Articles of Incorporation |
| 3.2 | Articles of Designation of Series A Preferred Stock |
| 3.3 | Bylaws |
| 10.1 | Lease and Amendment |
| 10.2 | Asset Purchase Agreement and Amendment |
| 10.3 | Operating Agreement, Lake Worth |
| 10.4 | Operating Agreement, Diversified Health Club I, LLC |
| 10.5+ | Employment Agreement between the Registrant and Andrew Barnett |
| 10.6+ | Consulting Agreement between Registrant and Roger Wittenbems |
| 23.2 | Consent of Sherb & Co., LLP |

+ Management contract or compensatory plan or arrangement.

### Terms and Definitions

| | |
| --- | --- |
| ASC | Accounting Standards Codification |
| ASU | Accounting Standards Update |
| FASB | Financial Accounting Standards Board |
| GAAP (US) | Generally Accepted Accounting Principles as applied in the United States |

### Organization and Nature of Business

Diversified Health and Fitness, Inc. (the "Company") is a Florida corporation organized on July 23, 2007. The Company franchises and owns health clubs with outlets across twelve separate branded divisions. The Company's health clubs are located in the United States.

### Going Concern and Management Plans

The accompanying consolidated financial statements have been prepared assuming that the Company will continue as a going concern, which contemplates the realization of assets and the satisfaction of liabilities in the normal course of business. The Company had incurred operating losses, has negative working capital and no operating cash flow and future losses are anticipated.

The Company's plan is to raise equity financing, which even if successful, may not result in cash flow sufficient to finance and expand its business and generate additional receipts from franchise contracts. These factors raise substantial doubt about the Company's ability to continue as a going concern. Realization of assets is dependent upon future operations of the Company, which in turn is dependent upon management's plans to meet its financing requirements and the success of its future operations. These consolidated financial statements do not include any adjustments related to the recoverability and classification of asset amounts or the amounts and classification of liabilities that might be necessary should the Company be unable to continue existence.

### Principles of Consolidation

The consolidated financial statements include the accounts of the Company and its operating subsidiaries Liberty Fitness Holdings Inc., Rejuvenate Franchise Corporation, ZOO Franchise Corp, ShapeXpress Holdings Inc., Fit for Her Holdings Inc., Fit Zone Holdings Inc., Access Fitness Holdings Inc., The Blitz, Butterfly Life Holdings Inc., 123 Fit Holdings Inc., DHF Equipment Inc., and American Body Works Holdings Inc. for the three-month period ended March 31, 2012 and 2011. It also includes the accounts of Diversified Health Partners LLC, Diversified Health Club 1 LLC, Diversified Health and Fitness Corp., and Zoo Lantana LLC for the three-month period ended March 31, 2012 and Zoo Commercial LLC for the period between February 12 and March 31, 2012. All significant intercompany balances and transactions have been eliminated in consolidation.

The Company owns interests of 47.5% of Diversified Health Club 1, LLC, 80.5% of American Body Works Holdings, Inc., 47.5% of Diversified Health and Fitness Corp, 47.5% of ZOO Lantana LLC, and 57% of ZOO Commercial LLC. These entities accounts are consolidated in the accompanying financial statements because the Company, or a company it controls, acts as the managing member

or has a majority of the directors of the applicable entity. Additionally, the Company or a company it controls cannot be substituted as the managing member of Diversified Health Club 1, LLC, Zoo Lantana LLC and Zoo Commercial LLC.

**Interim financial statements**

The accompanying unaudited consolidated financial statements have been prepared in accordance with generally accepted accounting principles for interim financial information. Accordingly, they do not include all of the information and the footnotes required by generally accepted accounting principles for complete financial statements. In the opinion of management, all adjustments, consisting only of normal recurring accruals, considered necessary for a fair presentation have been included. Operating results for the three-month period ended March 31, 2012 are not necessarily indicative of the results that may be expected for the fiscal year ending December 31, 2012.

F-28